IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Bryan Anthony Reo, | ) Case No. 1:19cv02589 |
| | ) |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| Martin Lindstedt, | ) |
| | ) |
| Defendant. | ) **REPORT AND RECOMMENDATION** |
| | ) |

**I.     Introduction**

This motion arises out of a defamation and false light action between plaintiff, Bryan Anthony Reo ("Reo"), and defendant, Martin Lindstedt ("Lindstedt").  Lindstedt's amended answer asserts "counterclaims" against Kyle Bristow ("Bristow") alleging Bristow engaged in a conspiracy with Reo to defame Lindstedt.  Bristow moves to dismiss those counterclaims under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) arguing that the court lacks personal jurisdiction over him and that Lindstedt has failed to state a claim upon which relief may be granted.  ECF Doc. 25. Because the Court lacks personal jurisdiction over Bristow and because Lindstedt has also failed to state a valid civil conspiracy claim against him, I recommend that the Court GRANT Bristow's motion to dismiss Lindstedt's "counterclaims" against Kyle Bristow.

**II.    Background**

Reo resides in Lake County, Ohio, and is authorized to practice law in Ohio.  Lindstedt is a pastor at the Church of Jesus Christ Christian/Aryan Nations of Missouri located in Granby,

Missouri. ECF Doc. 1. Bristow resides in Michigan and is registered to practice law in both Michigan and Ohio. ECF Doc. 25. at 21. However, he is not working on any active cases in Ohio at this time, and Lindstedt's claims do not arise out of any activity by Bristow in Ohio. *Id.* Lindstedt claims that Reo once worked as a "law clerk" for Bristow. ECF Doc. 17. at 7. He also claims that the men are both involved with an organization called the Foundation for the MarketPlace of Ideas ("FMI"). *Id.*

The relationship between Lindstedt and the two men has been contentious over the years, even before the events of this case. Lindstedt claims that, from 2010 to 2019, Bristow "libeled" him by publicly describing him a "convicted child molester." ECF Doc. 17 at 32. Although Lindstedt admits that he was arrested and charged with pedophilia-related crimes, he asserts that the matter never went to a preliminary hearing and never resulted in a conviction or incarceration. *Id.* Also, Reo has filed multiple defamation lawsuits against Lindstedt, including one in the Lake County, Ohio Court of Common Pleas that resulted in a $105,000 jury verdict against Lindstedt and his church. ECF Doc. 1 at ¶7.

In August 2019, statements accusing Reo of bribing a Missouri state judge with sexual favors appeared on http://whitenationalist.org. ECF Doc. 1 at ¶7. In September, more statements were published accusing Reo of an incestual relationship with his father and of having an extramarital affair. *Id.* at ¶20. In response to the publication of these statements, Reo filed two more actions,[1] against Lindstedt in the state court alleging common law defamation, false light, and intentional infliction of emotional distress. Reo's wife, Stefani Rossi Reo, and Reo's father, Anthony Domenic Reo, also filed two separate state court actions asserting the same claims. *See Stefani Rossi Reo v. Martin Lindstedt*, No. 1:19-cv-02786, *Anthony Domenic Reo v.*

---

[1] In addition to this case, *Bryan Anthony Reo v. Martin Lindstedt*, No. 1:19-cv-02589, Reo also filed a second action currently before Judge Oliver, *Bryan Anthony Reo v. Martin Lindstedt*, No. 1:19-cv-02103.

*Martin Lindstedt*, No. 1:19-cv-02615. Lindstedt subsequently removed all four cases pursuant to 28 U.S.C. § 1441 on federal question and diversity grounds. Lindstedt claims that these four cases represent a coordinated effort by Reo, his family, and his lawyers to "steal" Lindstedt's 1800-acre property in South Dakota. ECF Doc. 17 at ¶20.

Lindstedt points out that Reo and Bristow submitted responses to Lindstedt's filings "within an hour, even ten minutes of each other." ECF Doc. 17 at 24. Lindstedt accuses Bristow of working for the federal government against "Old White Supremacist organizations such as Aryan Nations and leaders such as Pastor Lindstedt." ECF Doc. 17 at 25. He alleges actions such as suing public universities in Ohio to permit white nationalists like Richard Spencer to speak on campuses while surrounded by hostile students and Antifa members. ECF Doc. 17 at 25. According to Lindstedt, this is part of a government run operation to identify white supremacists and render them "ineffective." ECF Doc. 17 at 25. However, Lindstedt does not explain how any of these allegations relate to him.

Arguably, Lindstedt's amended answer attempts to assert two "counterclaims"[2] against Bristow. Lindstedt's main claims are that Bristow has defamed him and has conspired with Reo. ECF Doc. 17 at 24. He asserts that Bristow (like Reo) has accused him of being a child molester. ECF Doc. 17 at 24. Lindstedt's amended answer does not allege facts establishing this court's personal jurisdiction over Bristow. ECF Doc. 17. Nor does he respond to this argument in his response to Bristow's motion to dismiss. ECF Doc. 25. Instead, he requests that the court strike Bristow's motion to dismiss and an attached exhibit reporting the child molestation charges against him. ECF Doc. 34. Bristow moves to have Lindstedt's "counterclaims" dismissed for

---

[2] Lindstedt's claims against parties other than Bryan Reo cannot be counterclaims; counterclaims can only be asserted against the party who sued a defendant. What Lindstedt is attempting is the statement of claims against non-parties or what is described as third party practice (for which he would have been required to file a third party complaint). Fed. R. Civ. P. 14.

both lack of personal jurisdiction and failure to state a claim pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure. ECF Doc. 25.

### III. Fed. R. Civ. P. 12(b)(2)—Lack of Personal Jurisdiction

Bristow moves to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. The party asserting a claim bears the burden of establishing jurisdiction and must make a *prima facie* showing that personal jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The court construes the pleadings in a light most favorable to this party when there is no evidentiary hearing. *Georgalis v. Facebook, Inc.*, 324 F. Supp.3d 955, 958 (N.D. Ohio 2018). Dismissal in this procedural posture is proper if "all the specific facts alleged by [the party asserting the claim] collectively fail to state a *prima facie* case for jurisdiction." *Id.* Although the party's burden at this stage is "relatively slight," (*Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017)), mere allegations of jurisdiction are not enough. *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019). Lindstedt's "counterclaims" do not allege any facts that would establish personal jurisdiction over Bristow in this case.

In diversity cases, the court applies the law of the forum state to determine whether personal jurisdiction exists. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). Under Ohio law, personal jurisdiction may be found either generally or specifically. *Nationwide Mut. Ins. Co. v. Tryg Int'l. Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). General personal jurisdiction exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Contacts establishing general personal jurisdiction need not be related in any way to the asserting party's claim. *Id.* However, "only a limited set of affiliations with a forum will render a defendant

4

amenable to [general] jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For individuals, general personal jurisdiction is usually established in the state where the defendant is domiciled. *Id.* Here, Lindstedt has not alleged any facts that would establish personal jurisdiction over Bristow. Bristow, on the other hand, has submitted a declaration stating that he lives in Michigan and does not have any active cases pending in Ohio. ECF Doc. 25 at 21. The court can only conclude that it lacks general personal jurisdiction over Bristow.

Unlike general jurisdiction, specific personal jurisdiction requires that a defendant's contact with the forum state be related to or arise out of the asserting party's cause of action. *Power Inv., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019). Courts in Ohio apply a two-step test to determine whether they have specific personal jurisdiction over a defendant: (1) determining whether personal jurisdiction may be asserted under Ohio's long-arm statute, and (2) determining whether the assertion of personal jurisdiction under the long-arm statute also comports with the Due Process Clause of the United States Constitution. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 429 (6th Cir. 2006).

Ohio Rev. Code § 2307.382, Ohio's long-arm statute, provides that courts may exercise personal jurisdiction when a party's cause of action arises out of the defendant's:

(1) transacting any business in Ohio;

(2) contracting to supply services or goods in Ohio;

(3) causing tortious injury by act or omission in Ohio;

(4) causing tortious injury in Ohio by an act or omission outside the state if the defendant regularly does business in Ohio, engages in any other persistent course of conduct in the state, or derives substantial revenue from goods or services rendered in the state;

(5) causing injury in the state by breach of express or implied warranty provided defendant regularly conducts business in Ohio;

5

      (6) causing tortious injury in Ohio by an act outside of the state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured in Ohio;

      (7) causing tortious injury by a criminal act, any element of which takes place in Ohio;

      (8) possessing real property in Ohio;

      (9) contracting to insure any person, property, or risk in Ohio.

Ohio Rev. Code § 2307.382(A)(1)–(9).

      Lindstedt bears the burden to establish jurisdiction, and none of his factual allegations implicate any of the specific jurisdictional provisions of Ohio Rev. Code § 2307.382(A). Summarizing Lindstedt's claims in the plainest terms possible, Lindstedt asserts that Bristow has: (1) conspired with Reo to take his land in South Dakota and/or deprive his Missouri church of assets, and (2) defamed Lindstedt by calling him a pedophile and a child molester. Plainly, none of these allegations arises out of any contention that Bristow transacted business in Ohio, formed a contract in Ohio, breached a warranty in Ohio, possessed property in Ohio, or insured a person in Ohio. For those reasons, Ohio Rev. Code § 2307.382(A)(1), (2), (5), (8), and (9) do not apply to this case.

      Lindstedt alleges that he suffered a tortious injury as a result of Bristow's conduct, but he has not alleged that the disputed conduct occurred in Ohio. Similarly, Lindstedt alleges that Bristow and Reo are "working in concert" (ECF Doc. 17 at ¶21), but he makes no claims that Bristow ever traveled to Ohio to meet with Reo to plan any conspiracy against Lindstedt. Without any factual allegation that Bristow's conduct took place in Ohio, jurisdiction cannot be claimed under Ohio Rev. Code § 2307.382(A)(3).

      Ohio Rev. Code § 2307.382(A)(3), (4) and (6) also do not confer jurisdiction over Bristow because Lindstedt has not alleged that any injury occurred in Ohio. For Ohio's long-arm

6

statute to confer jurisdiction over a person sued for a tort claims, the tortious injuries themselves must have occurred in Ohio. *See Grossi v. Presbyterian Univ. Hosp.*, 4 Ohio App. 3d 51, 54, 446 N.E.2d 473 (7th Dist. 1980) (tortious injuries must occur in Ohio to satisfy § 2307.382(A)(4) & (5)) and *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002) (tortious injuries must be in Ohio to satisfy § 2307.382(A)(3)) *overturned on other grounds by In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007), *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶¶43–44 (§ 2307.382(A)(6) requires nonresident defendant to "reasonably have expected that some person would be injured … in Ohio.").

Lindstedt's "counterclaims" do not explain how Bristow's actions caused any injury in Ohio. Lindstedt does not allege that he resides in Ohio, has any reputation to protect in Ohio or owns property in Ohio. The only allegation tying Bristow to Ohio relates to Bristow's alleged attempt to sabotage the white nationalist movement by putting Richard Spencer in danger in Ohio. But Lindstedt has not explained how this alleged conduct relates to him. In short, Lindstedt has not alleged any Ohio injury as a result of Bristow's actions. Thus, Ohio Rev. Code § 2307.382(A)(3), (4), & (6) do not confer personal jurisdiction over Bristow in this state.

Finally, although Lindstedt makes conclusory allegations that Bristow and Reo have engaged in a "criminal fraud," he has not pleaded any facts suggesting that there was an underlying criminal act to justify exercising jurisdiction under Ohio Rev. Code. § 2307.382(A)(7). Ohio Rev. Code. § 2307.382(A)(7) requires that at least one element of a crime occurred in Ohio. *Oasis Corp. v. Judd*, 132 F. Supp.2d 612, 621 (S.D. Ohio 2001). Here, there are no such allegations.

I find that Lindstedt cannot establish that this court has personal jurisdiction over Bristow based on Ohio's long-arm statute. That conclusion alone would justify dismissal under Fed. R.

7

Civ. P. 12(b)(2). However, to be of greatest assistance to the court, I have also analyzed whether exercising personal jurisdiction over Bristow would violate his Due Process rights. I conclude that it would.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution limits a court's ability to exercise personal jurisdiction over a defendant. To determine whether exercising personal jurisdiction over the defendant would offend due process, the relevant inquiry is whether "the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice." *Beydoun v. Wataniya Restaurants Holdings*, 768 F.3d 499, 505 (6th Cir. 2014). The Sixth Circuit has adopted a three-part test to guide this analysis: (1) defendant must "purposefully avail" himself of the privilege of acting in the forum state or causing a consequence in the forum state, (2) the plaintiff's cause of action must "arise from the defendant's activities" in the forum state, and (3) the acts of the defendant or the consequences caused by the defendant must have a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

The purposeful availment requirement ensures that a defendant will not be brought into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts." *Mid-West Materials, Inc. v. Tougher Indus., Inc.*, 484 F. Supp.2d 726, 732 (N.D. Ohio 2007) (*quoting Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985)). A defendant's conduct and connection to the forum state must be such that he may reasonably anticipate being brought into court there. *Id.* Physical presence in the forum state is not required as long as the defendant's efforts were "purposefully directed toward residents of [the forum state]." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996).

8

As an initial matter, it is settled that merely having communications with someone in Ohio is insufficient to find that the person purposefully availed himself of the privilege of acting in Ohio. In *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), a Minnesota resident, Rowlette, entered into a contract with Calphalon, an Ohio company, to represent the company in five states, not including Ohio. Although Rowlette frequently communicated with Calphalon in Ohio via phone and mail and made at least two physical visits to Ohio, the Sixth Circuit found that this was insufficient to find that Rowlette had purposefully availed himself of the privileges of the state. Rowlette did not communicate with Calphalon to "further his business and create continuous and substantial consequences" in Ohio but rather to fulfill his obligations to Calphalon in the five other states. *Id.* at 723. Rowlette's communications with Ohio occurred simply because Calphalon chose to be headquartered in Ohio. *Id. See also McMunigal v. Bloch*, No. 1:09-cv-01674, 2010 U.S. Dist. LEXIS 51322, at *21 (N.D. Ohio May 24, 2010) (law professor in California communicating with another law professor in Ohio about collaborating on a casebook did not purposefully avail herself of Ohio's privileges because communications were about book planning and not establishing long-term business interests in Ohio).

Lindstedt has only alleged that he suffered harm in Missouri and South Dakota, not in Ohio. Lindstedt claims that Bristow and Reo are engaged in a conspiracy against him to "steal" his property and deprive him of his rights. ECF Doc. 17 at ¶4. The arguable results of this conspiracy occurred, if anywhere, in Missouri, where Lindstedt lives, and South Dakota, where Lindstedt owns property. Bristow's communications with Reo in Ohio in furtherance of this alleged conspiracy were akin to the communications in *Calphalon*, made merely because Reo lives in Ohio. Because any harm to Lindstedt occurred, if anywhere, outside Ohio, Bristow did

9

not purposefully avail himself of the benefits of this state by allegedly conspiring with an Ohio resident.

When a defendant purposely seeks to transact business with Ohio residents in order to do business in Ohio, Ohio courts typically find no due process violation when personal jurisdiction is asserted. *CompuServe*, 89 F.3d at 1266. Bristow is registered to practice law in Ohio, but here, exercising jurisdiction would still violate his due process rights because Lindstedt's counterclaims have nothing to do with Bristow's contacts with Ohio. The conspiracy Lindstedt alleges does not involve Bristow providing legal services in Ohio and any alleged damages to Lindstedt were, if anywhere, outside of Ohio.

Lindstedt's personal jurisdiction claim also runs afoul of the Sixth Circuit's third factor: whether Bristow had a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. To satisfy the Sixth Circuit's reasonableness factor, the court looks at "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). These considerations also weigh against exercising jurisdiction over Bristow. He does not live in this state and other states have greater ties to Lindstedt's allegations than Ohio.

In summary, although Bristow is registered to practice law in Ohio, that practice is unrelated to Lindstedt's claims against him. Lindstedt's "counterclaims" are based on Bristow's communications with Reo to conspire in some undefined way. But these claims do not involve either conduct or damages in Ohio. Because Bristow's alleged conduct against Lindstedt did not relate to Ohio in any way, exercising personal jurisdiction over him would not be reasonable and would offend Bristow's due process rights.

Ohio's long-arm statute does not confer jurisdiction over Bristow and exercising personal jurisdiction over him would offend his due process rights. For these reasons, I recommend that the Court GRANT Bristow's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction.

In order to be of greatest assistance to the Court, I have also considered whether Lindstedt's claims against Bristow should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12 (b)(6).

## IV. Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim

Bristow has also moved to dismiss Lindstedt's claims under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." When reviewing a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to [the] plaintiff[], accept all the well-pleaded factual allegations as true, and draw all reasonable inferences in [the] plaintiff['s] favor." *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. Jan 4, 2019). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive, the factual assertions in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Bristow argues that Lindstedt's claims should be dismissed because they are conclusory and do not allege specific statements of fact. ECF Doc. 25 at 12. Bristow has not attempted to identify the claims that Lindstedt may have asserted against him. See ECF Doc. 25 at 14-15. And the court is mindful that *pro se* pleadings must be held to a less stringent standard than those

11

drafted by attorneys and liberally construed by the court. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). With that in mind, I recommend that the court could alternatively dismiss Lindstedt's civil conspiracy claim under Fed. R. Civ. P. 12(b)(6), but not his defamation claim.

### A. Defamation

Lindstedt alleges that Bristow defamed him by publishing statements that Lindstedt is a "pedophile" and a "convicted child molester." ECF Doc. 17 at 32. The essential elements of a defamation claim are: (1) a false statement, (2) that is defamatory, (3) was published, (4) injured the plaintiff, and (5) defendant acted with the required degree intent. *Sygula v. Regency Hosp. of Cleveland E.*, 2016-Ohio-2843, 64 N.E.3d 458, ¶16 (8th Dist.). There is little doubt that being called a "pedophile" and a "convicted child molester" are defamatory. Arguably, Lindstedt has sufficiently alleged that Bristow published defamatory statements. Further, one may readily conclude that charging someone who has not been convicted with being a "convicted" child molester is also false and defamatory.

Actionable defamation is "an injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business." *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489 (6th Cir. 1995). When the statement "consists of words which import an indictable criminal offense involving moral turpitude or infamous punishment," it is considered defamation *per se. McCartney v. Oblates of St. Francis de Sales*, 80 Ohio App.3d 345, 353, 609 N.E.2d 216. And a *per se* defamatory statement presumes damages to plaintiff. *Temethy v. Huntington Bancshares, Inc.*, 8th Dist. Cuyahoga No. 83291, 2004-Ohio-1253, ¶16. (6th Dist. 1992). Here, Lindstedt alleges that Bristow published a statement that he was a "convicted child molester." This is defamation *per se* and damages are presumed.

12

Despite presumed damages, Lindstedt is likely to face some significant obstacles in proving that *Bristow's* publication of this statement was the proximate cause of damages. *See Am. Chem Soc. v. Leadscope, Inc.,* 133 Ohio St.3d 366, 389, 2012-Ohio-4193 ( ("the plaintiff must show…the plaintiff suffered an injury as a *proximate result* of the publication.") (emphasis added). Lindstedt does not deny that he was publicly charged with a sex crime involving a minor. He even seems to have published this fact himself. However, he points out that the charges were ultimately dismissed. ECF Doc. 34 at 2. It may be difficult for Lindstedt to separate the damages stemming from Bristow's alleged defamatory statements from the damages that resulted from the criminal charges themselves. Nevertheless, when the court construes the complaint in the light most favorable to Lindstedt, accepts his factual allegations as true, and draws all reasonable inferences in his favor, Lindstedt has alleged facts which, if provable, may entitle him to relief. Bristow has not argued otherwise. In fact, he has not even identified defamation as one of the claims asserted against him. Because Lindstedt has arguably stated a valid defamation *per se* claim against Bristow, I would not recommend that this claim be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). However, because I have already recommended that the court dismiss Lindstedt's claims against Bristow for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2), it is not even necessary that the court consider this alternative argument in Bristow's motion to dismiss.

### B. Civil Conspiracy

Arguably, Lindstedt's pleading attempts to state a civil conspiracy claim against Bristow. ECF Doc. 17 at 8. A civil conspiracy is a "malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Magnum Steel & Trading, LLC v. Roderick Linton Belfance, LLP*, 2015-Ohio-3450,

13

41 N.E.3d 204, ¶14 (9th Dist.). The plaintiff must therefore prove: (1) a malicious combination, (2) two or more people, (3) injury to person or property, and (4) existence of an unlawful act independent from the actual conspiracy. *Mangelluzzi v. Morley*, 2015-Ohio-3143, 40 N.E.3d 588, ¶54 (8th Dist.). Lindstedt has alleged that two people, Bristow and Reo, conspired to injure him by attempting to take his property in both Missouri and South Dakota. ECF Doc. 17 at 8. However, he has failed to adequately allege two necessary elements of a civil conspiracy claim: "an unlawful act" and "a malicious combination."

### 1. Unlawful Act

To state a civil conspiracy claim, a party must allege an underlying unlawful act that would be actionable in the absence of a conspiracy. *Gosden*, 116 Ohio App.3d at 497. This element exists to prevent otherwise lawful acts from becoming actionable merely because two or more people are involved. *Id.* The underlying "unlawful" act alleged by Lindstedt appears to be that Bristow and Reo are using the Ohio court system to deprive Lindstedt of his property. However, this allegation is based on Reo having obtained a judgment against Lindstedt in state court and on Lindstedt's belief that Reo will attempt to foreclose on his real property at some future time. See ECF Doc. 17 at 7-8. Bristow did not obtain a judgment against Lindstedt and Lindstedt's allegations do not explain how Bristow has attempted to "steal" his property, or deprive him of any rights. See ECF Doc. 17 at 7-8. Thus, he has failed to state an essential element of a civil conspiracy claim against Bristow.

### 2. Malicious Combination

Lindstedt also fails to explain how Bristow worked together with Reo to deprive him of his property or his First Amendment rights. Lindstedt's main claims against Bristow are that he is: 1) involved in some organizations and activities that Lindstedt dislikes; and 2) that he has

14

published false statements against him. Neither of these assertions are necessarily related to Reo's alleged conduct against Lindstedt. I agree with Bristow that Lindstedt has only asserted conclusory allegations that Bristow and Reo are "conspiring" together against him. He has failed to allege facts establishing the essential "malicious combination" element of a civil conspiracy claim against Bristow.

Because Lindstedt has failed to allege facts sufficient to establish Bristow and Reo conspired to together to commit an unlawful act, Lindstedt's alleged civil conspiracy claim against Bristow must be dismissed for failure to state a claim upon which relief may be granted.

## V.    Recommendations

Because Ohio's long-arm statute does not confer personal jurisdiction over Bristow and because exercising jurisdiction over him would offend Bristow's due process rights, I recommend that the court GRANT Bristow's Fed. R. Civ. P. 12(b)(2) motion. Alternatively, I further recommend that the Court GRANT Bristow's Fed. R. Civ. P. 12(b)(6) motion on Lindstedt's attempted civil conspiracy claim against Bristow.

Dated: August 12, 2020

                                                        Thomas M. Parker
                                                        United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).