IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Bryan Anthony Reo, | ) Case No. 1:19cv02589 |
| | ) |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| Martin Lindstedt, | ) |
| | ) |
| Defendant. | ) **REPORT AND RECOMMENDATION** |
| | ) |

## I.  Introduction

This motion arises out of a defamation and false light action between plaintiff, Bryan Anthony Reo ("Reo"), and defendant Martin Lindstedt ("Lindstedt"). Lindstedt's amended answer attempts to assert "counterclaims[1]" against third-party defendants, Judge Patrick Condon ("Judge Condon") and the Lake County Court of Common Pleas ("Lake County CCP") (collectively "Third-Party Defendants"). Lindstedt's "counterclaims" are related to a prior libel action in Lake County over which Judge Condon presided. Because the Court lacks subject matter jurisdiction and/or should abstain from exercising jurisdiction, because Lindstedt has failed to state a claim upon which relief may be granted, because Judge Condon is immune from suit, and because Lake County CCP is not *sui juris,* I recommend that the Court GRANT Judge Condon's and Lake County CCP's motion to dismiss. ECF Doc. 35.

---

[1] Lindstedt's claims against Judge Condon and the Lake County CCP are not counterclaims, but third-party claims.

**II.     Background**

Reo resides in Lake County, Ohio, and is authorized to practice law in Ohio. Lindstedt is a pastor at the Church of Jesus Christ Christian/Aryan Nations of Missouri located in Granby, Missouri. ECF Doc. 1. Reo filed suit against Lindstedt and his church in Lake County CCP for libel and false light for statements made by Lindstedt throughout 2015 and 2016. ECF Doc. 1 at ¶7. Judge Condon, a Lake County CCP judge, presided over that case. ECF Doc. 17 at 26-28. Lindstedt claims that Judge Condon made several rulings that were unfavorable to Lindstedt during the Lake County litigation:

- allowing Reo to refer to Lindstedt as a "convicted child molester." ECF Doc. 17 at 27.
- allowing Reo to use "cherry-picked portions" of Lindstedt's website as evidence. *Id.*;
- empaneling a biased jury with "one female African and seven liberals." *Id.*;
- denying Lindstedt's motions for directed verdict and a new trial. ECF Doc. 17 at 11, 27;
- refusing to allow Lindstedt to present evidence in his favor. ECF Doc. 17 at 11.
- refusing to sanction Reo for perjury and abuse of the legal process. *Id.*

The Lake County litigation resulted in a $105,000.00 jury verdict against Lindstedt and his church in June 2019. ECF Doc. 1 at ¶7. Lindstedt has appealed to the Ohio Court of Appeals.[2] ECF Doc. 17 at 27.

In August 2019, statements accusing Reo of bribing a Missouri state judge with sexual favors appeared on http://whitenationalist.org. ECF Doc. 1 at ¶7. In September, more statements were published accusing Reo of an incestual relationship with his father and of having an extramarital affair. *Id.* at ¶20. In response to the publication of these statements, Reo filed two more actions[3] against Lindstedt in the state court alleging common law defamation, false light, and intentional infliction of emotional distress. Reo's wife, Stefani Rossi Reo, and Reo's

---

[2] Lindstedt has filed several appeals related to the Lake County litigation.
[3] In addition to this case, *Bryan Anthony Reo v. Martin Lindstedt*, No. 1:19-cv-02589, Reo also filed a second action currently before Judge Oliver, *Bryan Anthony Reo v. Martin Lindstedt*, No. 1:19-cv-02103.

2

father, Anthony Domenic Reo, also filed two separate state court actions asserting the same claims. *See Stefani Rossi Reo v. Martin Lindstedt*, No. 1:19-cv-02786, *Anthony Domenic Reo v. Martin Lindstedt*, No. 1:19-cv-02615. Lindstedt subsequently removed all four cases pursuant to 28 U.S.C. § 1441 on federal question and diversity grounds. Lindstedt claims that these four cases represent a coordinated effort by Reo, his family, and his lawyers to "steal" Lindstedt's 1800-acre property in South Dakota. ECF Doc. 17 at ¶20.

Lindstedt's amended answer and counterclaim (ECF Doc. 17) attempts to assert causes of action against Judge Condon and Lake County CCP in three broad categories. Lindstedt's primary claim alleges that these defendants violated his due process rights by improperly exercising jurisdiction over him, a resident of Missouri. *Id.* at ¶25. He also alleges that Judge Condon was biased against him and made several unfavorable rulings in the Lake County litigation. *Id.* at ¶25–28. Finally, Lindstedt argues that Judge Condon and Lake County CCP violated his First Amendment rights by "holding spurious unjust unfair irregular tribunals and to assemble a local lynch mob to try unpopular religious and political figures under rules which are not uniform." *Id.* Lindstedt argues that the First Amendment prohibits a lawsuit for "mere words" and, therefore, Judge Condon violated Lindstedt's rights by allowing defamation claims to proceed against him. *Id.* at ¶6. Lindstedt seeks declaratory and injunctive relief enjoining Lake County CCP from exercising jurisdiction over cases brought by Reo against Lindstedt. He also seeks monetary damages.

Judge Condon and Lake County CCP move to dismiss Lindstedt's claims for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). They also request that this Court abstain from exercising jurisdiction pursuant to *Younger v. Harris*. *Id.* They argue that Lindstedt has failed to state a claim for relief

3

under 42 U.S.C. § 1983 and that Judge Condon is immune from Lindstedt's claims. Finally, they argue that Lake County CCP is not *sui juris* and any claims against it must be dismissed. ECF Doc. 35.

### III.     *Rooker-Feldman* Doctrine — Lack of Subject Matter Jurisdiction

Judge Condon and Lake County CCP argue that this court does not have subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. A federal court lacks jurisdiction under the *Rooker-Feldman* doctrine to consider claims that would effectively require the federal court to sit as an appellate court to review state-court determinations. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.362 (1923). The *Rooker-Feldman* doctrine "stands for the proposition that a federal district may not hear an appeal of a case already litigated in the state court." *United States v. Owen,* 54 F.3d 271, 274 (6th Cir. 1995). Rather, a party raising a federal question must appeal a state court decision through the state system and then appeal directly to the United States Supreme Court. *Id;* 28 U.S.C. § 1257. The doctrine applies when, as here, a case is brought by one who has lost in a state court action, who is complaining of damages caused by the state court's judgment rendered before the district court proceedings commenced, and who is asking the district court to review and reject that judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed. 2d 454 (2005). The critical question in determining if the doctrine applies is whether the "source of injury" upon which the plaintiff bases his federal claim is a state-court judgment. *Lawrence v. Welch,* 531 F.3d 364, 368 (6th Cir. 2008). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting

jurisdiction." *Lawrence,* 531 F.3d at 368 (quoting *McCormick v. Braverman,* 451 F.3d 382, 394-95 (6th Cir. 2006)).

The *Rooker-Feldman* doctrine does not apply to bar review if a litigant presents "claims based on alleged violations of federal and state law that are independent of alleged deficiencies in the state-court [] proceeding." *Haller v. United States HUD,* 2012 U.S. Dist. LEXIS 95324 *17 (S.D. Ohio, July 10, 2012), citing, *Hines v. Franklin Savings & Loan,* No. 1:09cv914, 2011 U.S. Dist. LEXIS 24500 at *2 (S.D. Ohio Jan. 31, 2011). However, the plaintiff cannot circumvent the *Rooker-Feldman* doctrine by "recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations." *Wallis v. Fifth Third Bank,* 443 F. App'x 202, 204-05 (7th Cir. 2011).

Here, Lindstedt's attempted claims against Judge Condon and the Lake County CCP are based on Judge Condon's rulings from the litigation of the state court case. The only possible exception is Lindstedt's claim that Judge Condon and the Lake County CCP violated his First Amendment rights by allowing a defamation claim to proceed against him at all. But Lindstedt's citation to the First Amendment does not save his claims from the *Rooker-Feldman* doctrine. Rather, it appears that he is attempting to recast the adjudicated state court claim as a violation of his constitutional right in order to circumvent the state court proceedings. The *Rooker-Feldman* doctrine bars such an attempt, because Lindstedt's First Amendment violation allegation is inextricably intertwined with the state court judgment that imposed damages upon him for exercising that right.[4] "If the constitutional claims presented to a United States District Court are

---

[4] It bears notation that no government actor prevented Lindstedt from exercising his First Amendment rights. Indeed, the claims in this lawsuit, like those in the state court case, stem from Lindstedt having exercised his right to "free speech." The First Amendment protects our right to speak, but it does not shield us from facing the consequences when third parties have been damaged by our free speech, particularly when our statements are later proven to be false.

inextricably intertwined with the state court's denial in a judicial proceeding… then the district court is in essence being called on to review the state court-decision." *Feldman*, 460 U.S. at 483, fn. 6.

Moreover, even if Lindstedt's attempt to assert a First Amendment claim could somehow be disentangled from the state court case and judgment, his constitutional claim would not be against Judge Condon, who only presided over a defamation claim in state court. Courts have repeatedly held that no case or controversy exists "between a judge who adjudicates claims under a statute and the litigant who attacks the constitutionality of the statute." *See, e.g., In Re Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17, 21 (1st Cir. 1982). Because Lindstedt's attempted claims against Judge Condon and the Lake County CCP are barred by the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over them, and I recommend that the Court GRANT Judge Condon and Lake County CCP's motion to dismiss. ECF Doc. 35. But there are numerous other problems with Lindstedt's attempt to sue these defendants, which I will discuss below.

**IV.    *Younger* Abstention**

Because Lindstedt's claims challenge orders of Judge Condon that are currently on appeal, Judge Condon and Lake County CCP also argue that the Court should abstain from exercising jurisdiction pursuant to *Younger v. Harris.* ECF Doc. 35 at 4–6. *Younger* abstention permits a federal court to abstain from hearing a claim when going ahead with the case would interfere with a state proceeding. *See Doe v. Univ. of Kentucky*, 860 F.3d 365, 368–69 (6th Cir. 2017) (citing *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971)). The reasoning for the abstention doctrine is as follows:

> This underlying reason for restraining courts … is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state

> functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger*, 401 U.S. at 44.  Federal courts abstain under *Younger* when the parallel state court action falls into one of three categories:  (1) when there is an ongoing state criminal prosecution, (2) when there is a state civil enforcement proceeding that is "akin to [a] criminal prosecution[]," or (3) when there is a state "civil proceeding[] involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368, 109 S. Ct. 2506 (1989) [hereinafter *NOPSI*].  Judge Condon and Lake County CCP argue that the third category applies to Lindstedt's attempted claims.  Because Lindstedt's claims challenge rulings of Judge Condon that are currently on appeal in state court, the *Younger* principals apply.

The Court may abstain from exercising jurisdiction pursuant to *Younger* when three criteria are met: (1) the state proceeding is currently pending, (2) the proceedings involve an important state interest, and (3) the state proceedings will provide the plaintiff with an adequate opportunity to raise his constitutional claims.  *Doe*, 860 F.3d at 369 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–34, 102 S. Ct. 2515 (1982)).  The first criterion is met because the Lake County case is currently on appeal in the Ohio Court of Appeals.  ECF Doc. 17 at ¶26.  *See also* ECF Doc. 35 at 4; *Reo v. Lindstedt,* 2019-L-073[5], *Reo v. Lindstedt,* 2019-L-074[6], *Reo v. Lindstedt,* 2019-L-136[7], *Reo v. Lindstedt,* 2019-L-137[8].  The second criterion is also met because Ohio has an important state interest in providing remedies

---

[5] Eleventh District Court of Appeals Docket.
[6] Eleventh District Court of Appeals Docket.
[7] Eleventh District Court of Appeals Docket.
[8] Eleventh District Court of Appeals Docket.

7

for defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341, 94 S. Ct. 2997 (1974). If this Court were to adjudicate Lindstedt's claims, it would impermissibly review a state court decision on a state law. When federal courts abstain under *Younger*, they afford the state judiciary the level of respect that this nation's federal system demands. *See Younger*, 401 U.S. at 44. Finally, Ohio's appeal process provides Lindstedt with an adequate opportunity to raise his constitutional claims. The burden of establishing the *inadequacy* of the state proceedings rests on the party seeking federal court intervention. *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 701 (6th Cir. 2013). Lindstedt has not made such an argument. Thus, all three criteria for our court to abstain under *Younger* are met.

In order to avoid abstention, a party must demonstrate that state law "*clearly bars* the interposition of the constitutional claims." *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 334 (6th Cir. 2007) (emphasis in original). Other than making conclusory statements regarding bias, Lindstedt has not even attempted to make this showing, nor would he be able to do so.[9] Because Ohio law provides an adequate remedy for Lindstedt to appeal Judge Condon's rulings and the state judgment against him, I recommend that the Court abstain from exercising jurisdiction over Lindstedt's claims.

## V.     12(b)(6) — Failure to State a Claim

Condon and Lake County CCP also argue that Lindstedt's counterclaims should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). When reviewing a motion under Rule 12(b)(6), the court must "construe the complaint

---

[9] Reviewing a trial court's exercise of personal jurisdiction for due process errors is nothing new for the Ohio Court of Appeals. *See, e.g.*, *Kubyn v. Follett*, 2019-Ohio-3152, 141 N.E.3d 512 (11th Dist.) (reviewing trial court's determination that personal jurisdiction complied with Due Process). Nor is it uncommon for Ohio courts to review defamation claims for violating First Amendment rights. *See, e.g.*, *Jacobs v. Budak*, 156 Ohio App.3d 160, 2004-Ohio-522, 805 N.E.2d 111 (11th Dist.) (reviewing defamation claim for violating defendant's First Amendment rights).

8

in the light most favorable to [the] plaintiff[], accept all the well-pleaded factual allegations as true, and draw all reasonable inferences in [the] plaintiff['s] favor." *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. Jan 4, 2019). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive, the factual assertions in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because § 1983 is the exclusive means for a party to recover for constitutional violations allegedly committed by government personnel, Lindstedt's attempted constitutional claims against Judge Condon and the Lake County CCP must be construed as a §1983 claim. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987) *overturned on other grounds by Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989). *See also Steele v. Hall*, No. 1:13-cv-1598, 2013 U.S. Dist. LEXIS 110501, at *4 n.1 (N.D. Ohio Aug. 6, 2013). In other words, if Lindstedt's constitutional claims are to proceed against Judge Condon and the Lake County CCP at all, they must proceed under 42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a party must prove that: 1) he was denied a right secured by the Constitution or the laws of the United States; and 2) the deprivation was committed by one acting under color of law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981); *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1244 (6th Cir. 1989), *cert denied,* 495 U.S. 932 (1990). Here, Lindstedt has not stated valid constitutional violations in the claims he has asserted against Judge Condon and the Lake County CCP.

9

Third-Party Defendants argue that Lindstedt has failed to state a constitutional claim because his claims are based entirely on Judge Condon's rulings. ECF Doc. 35 at 8–9. But an allegedly incorrect decision by an Ohio court does not constitute a deprivation of due process of law which a federal court may redress. *Agg v. Flanagan*, 855 F.2d 336, 339 (6th Cir. 1988). The proper remedy for an improper ruling in a state trial court is an appeal to the state appellate court. *Id.* The federal court will only review such claims when the state court's procedures are inadequate to vindicate a plaintiff's rights. *Id.*

Here, Lindstedt's claims relate to the underlying state court proceedings. He does not argue that Ohio's procedures are inadequate to protect his rights. In fact, he is currently taking advantage of Ohio's appeal process. ECF Doc. 17 at ¶26 ("Now while this case is still in appeals and Pastor Lindstedt has asked that the Lake County jury decision be overturned or for a new trial … And if necessary let the matter go onto appeal before the Ohio 11th Court of Appeals and then onward to higher courts."). Lindstedt's remedy for the trial court's rulings and judgment is to appeal to the Ohio Court of Appeals, and, potentially the Ohio Supreme Court and United States Supreme Court. He cannot get an additional remedy by attempting to recast the alleged errors as constitutional violations in a federal court § 1983 action. Because Lindstedt has not sufficiently alleged a constitutional violation, I recommend that his attempted 42 U.S.C. § 1983 claims against Judge Condon and the Lake County CCP be dismissed for failure to state a claim upon which relief may be granted.

## VI.     Judicial Immunity

Judge Condon argues that he enjoys immunity from Lindstedt's attempted claims. Judges are generally immune from civil suits for money damages including claims brought pursuant to 42 U.S.C. § 1983. *Mireles v. Waco,* 502 U.S. 9 (1991). Judicial immunity has also

10

been extended to include clams for injunctive relief. In 1996, 42 U.S.C. § 1983 was amended to provide that a judge may not be enjoined his or her judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983.

Judge Condon's immunity can only be overcome in two situations: 1) if he acted in the complete absence of all jurisdiction; or 2) if his challenged actions were non-judicial. *Mireles,* 502 U.S. at 11-12. Judge Condon had jurisdiction[10] to preside over Lindstedt's state case pursuant to Ohio Rev. Code § 2305.01, and the act of presiding over a civil case was clearly a judicial act. Lindstedt has not argued otherwise. Because Judge Condon enjoys judicial immunity from Lindstedt's attempted claims, I recommend that the Court dismiss Lindstedt's "counterclaims" against Judge Condon.

## VII.    Lake County CCP is not *Sui Juris*

Third-Party Defendants also argue that Lake County CCP is not *sui juris* because it cannot sue or be sued in its own right. *Malone v. Ct. of Common Pleas of Cuyahoga Cty.*, 45 Ohio St.2d 245, 248, 344 N.E.2d 126 (1976). A court is merely a place in which justice is administered. *Todd v. United States,* 158 U.S. 278 (1985). If, for the sake of analysis, a common pleas court was assumed to be an entity that could be sued, it would be an arm of the state and immune from liability under the Eleventh Amendment. *Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016). Moreover, states and state entities are not considered

---

[10] Lindstedt's response argues that Judge Condon and the Lake County CCP did not have personal jurisdiction over him. ECF Doc. 42 at 9. If Lindstedt's argument has merit, he was required to raise it first in state court. It is likely that, by appearing in that case and litigating it through trial, Lindstedt waived the right to argue that the state court lacked personal jurisdiction. "[P]ersonal jurisdiction is a 'waivable right,' and an individual may consent to a specific court exercising jurisdiction over him or her." *84 Lumber Co., L.P. v. Houser*, 188 Ohio App.3d 581, 2010-Ohio-3683, ¶17, 936 N.E.2d 131 (11th Dist.),citing *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, ¶6, 860 N.E.2d 741. "One way for an individual to waive personal jurisdiction is to voluntarily appear and submit to the jurisdiction of the court." *Id.* at ¶18 (citations omitted).

11

"persons" subject to liability under § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66-67 (1989). In short, Lake County CCP is not amenable to suit; Lindstedt has not cited any contrary authority. I recommend that the Court dismiss Lindstedt's attempted "counterclaims" against Lake County CCP.

## VIII. Recommendations

Because the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, I recommend that Lindstedt's attempted counterclaims against Judge Condon and Lake County CCP be dismissed. Because Lindstedt's claims are currently pending in the Ohio Court of Appeals, I further recommend that the Court abstain from exercising jurisdiction pursuant to *Younger v. Harris*. Alternatively, I recommend that the Court dismiss Lindstedt's attempted claims against Judge Condon and Lake County CCP because he has failed to state a constitutional violation and, therefore, § 1983 claims against them; because Judge Condon is immune from Lindstedt's attempted claims; and because Lake County CCP is not a *sui juris* entity capable of being sued. The Court should GRANT the motion to dismiss filed by Judge Condon and Lake County Court of Common Pleas. ECF Doc. 35.

Dated: August 17, 2020

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).